Jeffrey A. Rager, Esq., SBN 185216
James Y. Yoon, Esq. SBN 289906
THE RAGER LAW FIRM
970 West 190th Street, Suite 340
Torrance, California 90502
Telephone: (310) 527-6994
Facsimile: (310) 527-6800
Email: jeff@ragerlawoffices.com
       james@ragerlawoffices.com

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN MARIE WOODRUM | CASE No.: 8:17-cv-02264-DOC-AS |
| Plaintiff, | PLAINTIFF'S NOTICE OF AND MOTION FOR REMAND |
| vs. | Date: February 26, 2018<br>Time: 8:30 a.m.<br>Dept.: 9D |
| AUTOMATIC DATA PROCESSING, INC., a corporation; ADP, LLC, a corporation, LYLE BURLEY, an individual, and Does 1 through 10, inclusive, | November 6, 2017 |
| Defendants. | |

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on February 26, 2018, at 8:30 a.m., or as soon thereafter as counsel may be heard before the Honorable Judge David O. Carter, in Courtroom 9D of the United States Courthouse, located at 411 West Fourth Street, Santa Ana, California, Plaintiff will move the court for an Order pursuant to 28 U.S.C. § 1447(c), 28 U.S.C. § 1441(b)(2), and 28 U.S.C. §1332 remanding this case to State Court.

///

1      Good cause exists for the relief requested in that removal based on diversity

2 jurisdiction by the Defendants was improper because Plaintiff has properly stated claims

3 of Disability Harassment, Defamation, and Intentional Infliction of Emotional Distress

4 against Lyle Burley, who has been served and is a citizen of the state of California.

5      As explained below, Defendant cannot prove by clear and convincing evidence

6 that there is no possibility that the plaintiff will be able to establish a cause of action

7 against the in-state defendant, Mr. Burley.

8      This Motion is based upon this Notice of Motion, the accompanying Memorandum

9 of Points and Authorities, the declaration of Jeffrey A. Rager, all pleadings and papers

10 on file in this action, and upon such others matters as may be presented to the Court at

11 the time of the hearing.

12

13 Dated: January 19, 2018         THE RAGER LAW FIRM

14

15

16                By: _____

16                     Jeffrey A. Rager

17                     James Y. Yoon

                        Attorneys for Plaintiff,

18                     DAWN MARIE WOODRUM

19

20

21

22

23

24

25

26

27

28

PLAINTIFF DAWN MARIE WOODRUM'S NOTICE OF AND
MOTION FOR REMAND

**Table of Contents**

I.     Procedural Posture  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    Introduction to Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

III.   Defendant must prove by clear and convincing evidence that there
       is no possibility that a cause of action can be stated against the
       Individual Defendant, Lyle Burley.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.    Defendants rely upon the outdated discrimination cases of *Reno*
       and *Janken* in their Removal Notice.  Current California caselaw
       makes it clear that ongoing discriminatory conduct is evidence
       that supports a harassment claim.  The more recent California
       Supreme Court cases of *Miller* and *Roby* articulate the controlling law. . . . . .  5

V.     Individuals are liable for statements that they make impacting an
       employee's occupational reputation in the workplace.  Federal
       Courts have recognized this by remanding cases alleging
       defamation against individual employees.  . . . . . . . . . . . . . . . . . . . . . . . . .  8

VI.    Employees are liable for Intentional Infliction of Emotional
       Distress committed in the workforce.  Defendants fail to inform
       the Court that the alleged "managerial privilege" only applies to
       claims for intentional interference with contractual relationship,
       which Plaintiff has not alleged. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

VII.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

1

**Table of Authorities**

2 **California Cases:**

3 *Cameron v. Wernick,* 251 Cal.App.2d 890, 893 (1967) . . . . . . . . . . . . . . . . . . . . . . 9

4 *Cabesuela v. Browning-Ferris Indus.,* 68 Cal.App.4th 101, 112 (1998) . . . . . . . . 15

5 *DiGiorgio Corp. v. Valley Labor Citizen,* 260 Cal.App.2d, 273 (1968) . . . . . . . . 10

6 *Fisher v. San Pedro Peninsula Hosp.* 214 Cal.App.3d 590, 618 (1989) . . . . . . . . . 15

7 *Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 1085 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 15

8 *Janken v. GM Hughes Electronics*, Cal.App.4th 55 (1996) 46 . . . . . . . . . . . . . . . . 5

9 *Jensen v. Hewlett-Packard Co.,* 14 Cal.App.4th 958, 965 (1993) . . . . . . . . . . . . . 10

10 *Kovatch v. California Cas. Mgmt. Co.,* 65 Cal.App.4th 1256, 1277 (1998) . . . . . . 15

11 *Larive v. Willitt*, 154 Cal.App.2d 140, 141-142 (1957) . . . . . . . . . . . . . . . . . . . . . 10

12 *Miller v. Department of Corrections,* 36 Cal.4th 446 (2005) . . . . . . . . . . . 5, 6, 15, 16

13 *Reno v. Baird*, (1998) 18 Cal.4th 640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

14 *Richards v. CH2M Hill, Inc.,* 26 Cal. 4th 798, 824 (2001) . . . . . . . . . . . . . . . . . . 7, 8

15 *Roby v. McKesson*, 47 Cal.4th 686, 705-706 (2009) . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

16 *Rulon-Miller v. IBM Corp.* 162 Cal.App.3d 241, 254 (1984) . . . . . . . . . . . . . . . 15

17 *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 1120 (1984) . . . . . . . . . . . . . . . 16

18 *Washer v. Bank of America*, 21 Cal.2d 822, 827 (1943) . . . . . . . . . . . . . . . . . . . . . 9

19 *White v. Ultramar*, 21 Cal.4th 563 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20 *Williams v. Daily Review, Inc.*, 236 Cal.App.2d 405, 411 (1965) . . . . . . . . . . . . . 10

21

22 **Federal Cases:**

23 *Amarant v. Home Depot U.S.A., Inc.*, 2013 WL 3146809

24      (E.D. Cal. June 18, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 *Archuleta v. American Airlines, Inc.,* Case No. 00-1286 MMM,

26      2000 WL 656808, (C.D. Cal. May 12, 2000) . . . . . . . . . . . . . . . . . . . . . . . 4

27 *Argarwal v. Johnson*, 25 Cal.3d 932, 947 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 13

28 *Arvizu v. Wal-Mart Stores, Inc.*, 2017 WL 747432 (N.D. Cal. Feb. 27, 2017) . . . . 11

1   *Calero v. Unisys Corp.,* 271 F.Supp.2d 1172, 1176-77 (N.D. Cal. 2003) . . . . . .  4, 14

2   *Davis v. Wal-Mart Stores Inc.*, No. 216CV9480JFWAJWX, 2017 WL 499595

3      (C.D. Cal. Feb. 6, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

4   *Gaus v. Miles Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . .  3, 4

5   *Good v. Prudential*, 4 F. Supp. 2d 804, 807 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . .  3

6   *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983) . . . . . . . . . . . . . .  3

7   *Hamilton Materials Inc. v. Dow Chemical Corporation*, 494 F.3d 1203,

8      1206 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

9   *Hernandez v. Ignite Rest. Grp., Inc.*, 917 F. Supp. 2d 1086, 1090

10     (E.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

11   *Huber v. Standard Ins. Co.,* 841 F.2d 980, 987 (9th Cir. 1988) . . . . . . . . . . . . . . .  16

12   *Hunter v. Philip Morris USA*, 582 F. 3d 1039, 1046 (9th Cir. 2009) . . . . . . . . . . . .  3

13   *Johnson v. Wells Fargo & Company*, 2014 WL 6475128

14     (C.D. Cal. Nov. 19, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 13

15   *Kacludis v. GTE Sprint Communications Corp.*, 806 F.Supp. 866, 872

16     (N.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

17   *Landucci v. State Farm Insurance Company,* 65 F.Supp.3d 694, 706-707

18     (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

19   *Los Angeles Airway v. Davis*, 687 F.2.d 321, 328 . . . . . . . . . . . . . . . . . . . . . . . . .  15

20   *Macey v. Allstate Property and Cas. Ins. Co.,* 220 F.Supp.2d 1116, 1117

21     (N.D. Cal.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

22   *May v. Semblant, Inc*., No. 5:13-CV-01576-EJD, 2013 WL 5423614

23     (N.D. Cal. Sept. 27, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *15*

24   *McCabe v. General Foods Corp*., 811 F.2d 1336 (9th Cir. 1987) . . . . . . . . . . . . . .  14

25   *Mohammed v. Watson Pharmaceuticals Inc.,* Case No. 09-0079 DOC,

26     2009 WL 857517 (C. D. Cal. Mar. 26, 2009) . . . . . . . . . . . . . . . . . . . . . . .  4

27   *Morales v. Gruma Corporation*, 2013 WL 6018040 (C.D.Cal.

28     Nov. 12, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12, 13

*Niami v. Federal Express Print Services, Inc.,* 2010 WL 958045
    (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Notick v. Merck & Co., Inc.,* SACV 10-1672 DOC, 2011 WL 87000,
    (C.D. Cal. Jan. 4, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Plute v. Roadway Package System, Inc.,* 141 F. Supp. 2d at 1008
    (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Sanchez v. Lane Bryant, Inc.,* 123 F. Supp.3d 1238, 1240 (9th Cir. 2015) . . 10, 11, 14
*Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368,
    1371 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*Umamoto v. Insphere Insurance Solutions, Inc.,* 2013 WL 2084475
    (N.D.Cal. May 14, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Webber v. Nike USA, Inc.,* 2012 WL 4845549 (S.D.Cal. Oct. 9, 2012) . . . . . . 11, 14
*Wis. Dept. Of Corrections v. Schacht,* 524 U.S. 381, 389 (1998) . . . . . . . . . . . . . . 3

**Statutes:**
28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
28 U.S.C. § 1441 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
28 U.S.C. § 1447 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Civil Code § 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Other Sources:**
Prosser, Torts (2d ed.) p.787 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I.    Procedural Posture.

On November 6, 2017, Dawn Marie Woodrum filed the instant complaint in Orange County before the Honorable Sheila Fell.  ADP, Inc., ADP, LLC, and Lyle Burley were all served with the Complaint on December 5, 2017.  Declaration of Jeffrey A. Rager, p. 2, ¶ 2, ll. 7-9.

On December 28, 2017, Defendants served a Notice of Removal, which was received on January 3, 2018.  Declaration of Jeffrey A. Rager, p. 2, ¶ 3 ll. 10-11.

## II.    Introduction to Case.

Dawn Marie Woodrum worked for ADP in excess of 18 years.  She received consistently good reviews through June 30, 2016.  Complaint, ¶¶ 8-25, 47.

In November 2016, Ms. Woodrum underwent a nerve study for numbness and tingling in her left arm.  She was diagnosed with carpal tunnel in the left arm.  She concurrently filed a Workers' Compensation Claim.  Complaint, ¶ 26.

On November 28, 2016, Ms. Woodrum returned to her physician after work hours.  She was instructed to undergo physical therapy.  Ms. Woodrum explained to Human Resources that she had a carpal tunnel issue in the left arm.  Human Resources told Ms. Woodrum that physical therapy would have to be done on non-work hours.  Complaint, ¶ 27.  In other words, they were refusing to accommodate time off for physical therapy.

On March 7, 2017, Ms. Woodrum underwent carpal tunnel surgery.  She was out of work from March 8, 2017 through May 22, 2017.  She was not offered leave under CFRA nor was her time designated as such.  Complaint, ¶ 32.

On May 16, 2017, Ms. Woodrum was released to work effective May 22, 2017 with the restrictions of 30 minute productive break from typing for 30 minutes per hour, and no lifting over 5 pounds.  Complaint, ¶ 33.  These were return to work restrictions provided by Dr. Perry Secor.  (A true and correct copy of the Physician Work Activity Status Report to Employer, are attached as Exhibit A to the declaration of Jeffrey A. Rager filed concurrently herewith.)

///

On May 22, 2017, Ms. Woodrum returned to work.  She worked for two hours. Her supervisor, Lyle Burley, said she would have to leave because the employer had not approved her return to work.  He walked her out of the facility, and said that he would let her know when her return to work was approved.  Complaint, ¶ 34.  In other words, Mr. Burley kicked her off the premises after she had been working with disability restrictions for almost a week.

On May 23, 2017, Mr. Burley continued his harassment by refusing to allow her to return to work with physician-approved restrictions.  Complaint, ¶ 35.

Again, the following day, Mr. Burley refused to allow Ms. Woodrum to work with her restrictions.  Complaint, ¶ 36.

From May 24, 2017 through July 25, 2017, Ms. Woodrum continued to attempt to return to work.  Not only was she not permitted to return to work, she received a COBRA notice associated with termination.  Complaint, ¶¶ 36-39.  (See June 13, 2017 and June 27, 2017 Physician Work Activity Status Reports to Employer, attached as Exhibit A to the declaration of Jeffrey A. Rager filed concurrently herewith.)

On July 25, 2017, Ms. Woodrum's restrictions were reduced to a 5-minute break for every hour of work.  Complaint, ¶ 40.  (See July 25, 2017 Physician Work Activity Status Reports to Employer, attached as Exhibit A to the declaration of Jeffrey A. Rager filed concurrently herewith.)

On July 26, 2017, Ms. Woodrum called Lyle Burley, and left a voicemail inquiring whether she would be allowed to return to work.  Complaint, ¶ 41.

On July 26, 2017, Lyle Burley refused to allow Ms. Woodrum to return to work with even the reduced restrictions.  Complaint, ¶ 42.  These were return to work restrictions provided by Dr. Perry Secor.

On July 27, 2017, Ms. Woodrum called back Mr. Burley, and left him a voicemail. Complaint, ¶ 44.

Lyle Burley responded by telling her that she no longer had a job.  Complaint, ¶ 45.

As a result of the aforementioned conduct, Plaintiff alleged the following claims against Mr. Burley: 7th cause of action for Disability Harassment, 9th cause of action for Defamation and 10th cause of action for Intentional Infliction of Emotional Distress.

**III.   Defendant must prove by clear and convincing evidence that there is no possibility that a cause of action can be stated against the Individual Defendant, Lyle Burley.**

Courts strictly construe the removal statute against removal jurisdiction. *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987), cert. denied, 484 U.S. 850.  Even though Plaintiff brings this motion, Defendants bear the burden of demonstrating to the Court that it has subject matter jurisdiction due to the existence of diversity. *Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Here, Defendants removed the action pursuant to 28 U.S.C. §1441 (b), which permits the removal under this Court's diversity jurisdiction. 28 U.S.C. §1332. Generally, "[t]he presence of the nondiverse party automatically destroys original [subject matter] jurisdiction." *Wis. Dept. Of Corrections v. Schacht*, 524 U.S. 381, 389 (1998).  The standards reflect the "general presumption against fraudulent joinder" that complements the "strong presumption against removal jurisdiction."  See *Hunter v. Philip Morris USA*, 582 F. 3d 1039, 1046 (9th Cir. 2009).   But if the defendant is not fraudulently joined, the case should be remanded to state court pursuant to 28 U.S.C. §1447(c); See *Hunter*, 582 F. 3d at 1048.

The burden of proving a fraudulent joinder is a heavy one.  The removing party must prove by clear and convincing evidence that either there has been outright fraud committed in the plaintiff's pleadings or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.  *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983); *Hamilton Materials Inc. v. Dow Chemical Corporation*, 494 F.3d 1203, 1206 (9th Cir. 2007). As long as there is a "non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Good v. Prudential*,

4 F. Supp. 2d 804, 807 (N.D. Cal. 1998). "Merely showing that an action is likely to be dismissed against a defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent." *Amarant v. Home Depot U.S.A., Inc.*, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

Here, it is clear that an individual is liable under California law for harassment, defamation, and intentional infliction of emotional distress. Below, Plaintiff will explain how the aforementioned allegations in the Complaint harmonize with the controlling caselaw on each of the claims.

To the extent there is doubt regarding the adequacy of all three claims, all inferences should be construed in favor of remand.

"All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." *Plute v. Roadway Package System, Inc.,* 141 F. Supp. 2d at 1008 (N.D. Cal. 2001) (quoting *Archuleta v. American Airlines, Inc.,* Case No. 00-1286 MMM, 2000 WL 656808, *4 (C.D. Cal. May 12, 2000) (citing *Gaus,* 980 F.2d at 566-567); see also *Notick v. Merck & Co., Inc.,* SACV 10-1672 DOC, 2011 WL 87000, * 2 (C.D. Cal. Jan. 4, 2011) ("Any disputed factual issues, ambiguities in state law or doubts arising from inartful, ambiguous or technically defective pleading must be resolved in favor of remand.")

In other words, if doubts exist regarding the adequacy of the pleadings, Defendant should be required to file a demurrer in State Superior Court, and Plaintiff should be given the opportunity to oppose it, with the option of filing an amended pleading.

Relative to the instant motion, in determining whether joinder of a defendant is fraudulent or a sham, the court must resolve "all disputed questions of fact and all ambiguities in the controlling state law" in favor of the non-removing party. *Calero v. Unisys Corp.,* 271 F.Supp.2d 1172, 1176-77 (N.D. Cal. 2003); see also *Macey v. Allstate Property and Cas. Ins. Co.,* 220 F.Supp.2d 1116, 1117 (N.D. Cal.2002); *Mohammed v. Watson Pharmaceuticals Inc.,* Case No. 09-0079 DOC, 2009 WL 857517, *6 (C. D. Cal.

1  Mar. 26, 2009) ("district courts must not pretry substantive factual issues in order to

2  answer the discrete threshold question of whether the joinder of an in-state defendant is

3  fraudulent") (internal quotation marks and citations omitted).

4  **IV.    Defendants rely upon the outdated discrimination cases of *Reno* and *Janken***

5  **in their Removal Notice.  Current California caselaw makes it clear that**

6  **ongoing discriminatory conduct is evidence that supports a harassment claim.**

7  **The more recent California Supreme Court cases of *Miller* and *Roby***

8  **articulate the controlling law.**

9  Notably, *Janken v. GM Hughes Electronics*, Cal.App.4th 55 (1996) 46 and *Reno*

10  *v. Baird*, (1998) 18 Cal.4th 640 stand for the proposition that an individual cannot be

11  held liable for discrimination, but they can for harassment.

12  Thus, if a plaintiff had a claim for disability discrimination, and a supervisor was

13  named, they are properly dismissed from a discrimination claim.

14  However, if both disability discrimination and harassment claims are alleged, the

15  supervisor's discriminatory conduct can be used as evidence of an intent to harass based

16  upon a person's disability.

17  This common sense rule is based upon the logic that the underlying evidence on

18  both these claims are intertwined and discriminatory actions may prove a harassing

19  intention or message.

20  In affirming that personnel management actions may be relied upon as evidence

21  in support of FEHA harassment claim, *Roby* specifically addressed the issues raised in

22  *Reno* and *Janken*, dismissing the holding therein as serving as any type of bar to the

23  plaintiff's recovery.  *Roby v. McKesson*, 47 Cal.4th 686 (2009) (" we can discern no

24  reason why an employee who is the victim of discrimination based on some official

25  action of the employer cannot also be the victim of harassment by a supervisor for

26  abusive messages that create a hostile working environment, and under the FEHA the

27  employee would have two separate claims of injury." *Id.* at 707.

28  ///

1    As stated in *Roby v. McKesson Corp.*, 47 Cal.4th at 705-706, "The FEHA's
2  distinction between discrimination and harassment does not mean that harassment claims
3  are relegated to a lower status.    The FEHA does not differentiate in terms of
4  wrongfulness between discrimination and harassment; both are 'unlawful employment
5  practice[s]' (§ 12940), and in both cases an aggrieved employee can obtain full
6  compensation for any resulting injury.  In addition, we can discern no reason why an
7  employee who is the victim of discrimination based on some official action of the
8  employer cannot also be the victim of harassment by a supervisor for abusive messages
9  that create a hostile working environment, and under the FEHA the employee would
10  have two separate claims of injury.  *Roby,* 47 Cal.4th at 762.

11    *Roby* proceeded to harmonize prior decisions regarding the interplay of harassment
12  and discrimination cases including *Reno* and *Miller v. Department of Corrections,* 36
13  Cal.4th 446 (2005). "Our decision in *Miller, supra*, 36 Cal.4th at pages 460-466, further
14  clarifies the FEHA"s distinction between discrimination and harassment.  Although
15  discrimination and harassment are separate wrongs, they are sometimes closely
16  interrelated, and even overlapping, particularly with regard to proof."  *Ibid.*

17    "Thus, in *Miller* the immediate source of the plaintiffs' alleged injuries was the
18  offensive sex-biased *message* that the supervisor conveyed, not a demotion or an
19  unfavorable job assignment, and therefore the plaintiffs' cause of action was for
20  harassment, not for discrimination.    Nevertheless, official employment actions
21  constituted the evidentiary basis of the harassment cause of action, because the
22  supervisor used those official actions as his means of conveying his offensive message.
23  Our decision in *Miller* is wholly consistent with *Reno, supra*, 18 Cal.4th at pages 645-
24  647, because it confirms that harassment is generally concerned with the message
25  conveyed to an employee, and therefore with the social environment of the workplace,
26  whereas discrimination is concerned with explicit changes in the terms or conditions of
27  employment. *Miller*, however, makes clear that in some cases the hostile message that
28  constitutes the harassment is conveyed through official employment actions, and

PLAINTIFF DAWN MARIE WOODRUM'S NOTICE OF AND
MOTION FOR REMAND

therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim. *Roby,* 47 Cal.4th at 762-763; *See Landucci v. State Farm Insurance Company,* 65 F.Supp.3d 694, 706-707 (N.D. Cal. 2014) (Denying defendant's motion to dismiss and stating "*Roby* makes clear that official employment actions may be considered when evaluating a harassment claim if the conduct contributes to communicating the hostile and harassing message of the supervisor"); *see accord Niami v. Federal Express Print Services, Inc.,* 2010 WL 958045 *4-5 (N.D. Cal. 2010) (Court granting plaintiff's motion to remand to state court and concluding that the personnel decisions made by defendant could be construed as harassing conduct.)

In *Roby,* the plaintiff had an anxiety disorder. The medicine she took, and her nervousness caused her body odor and sores. Her supervisor commented on the odor and the sores, but not necessarily in the context of her disability. He gave her progressive disciplinary warnings and fired her. The Court held these adverse employment actions were conduct that supported the harassment claim. *Id.* at 708-709.

Here, after escorting Ms. Woodrum off Defendant's premises after she requested accommodations, Lyle Burley repeatedly denied and stymied all her ongoing accommodation requests in the months that followed. He then told Ms. Woodrum that she no longer had a job to return to.

As explained below, these are not separate and discrete acts. They are a continuing course of conduct that forms the basis for a disability harassment claim.

In *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 824 (2001), the Court denied a new trial motion on the grounds that the multiple failures to accommodate plaintiff were sufficient to support the disability harassment and failure to accommodate claims.

In *Richards*, the employee suffered for multiple sclerosis. She was granted a 10-month leave and a transfer request, although it was delayed. Thereafter, she was permitted to do some of her work from home, but a dispute arose over who would buy her a computer to work from home; a computer the company refused to provide. Ms. Richards then complained that there were items in the hallway at work that prevented her

1  from moving in the hallways; she would move them and they would get moved back.
2  Richards also requested that nonskid tape be applied to the wheelchair ramp and the
3  elevators be widened, amongst other accommodation requests.  These requests never
4  came to fruition. Eventually, she resigned. The Court held that such ongoing denials of
5  accommodations over a 5-year period supported a verdict on her claims for disability
6  harassment and failure to accommodate.

7      In affirming the Superior Court's denial of the new trial motion, the Supreme
8  Court stated, "the company had engaged in a continuing pattern of harassment, neglect
9  and a violation of her rights in terms of accommodations, even reasonable
10 accommodations, a pattern that continued on up until the day she left, practically." *Id.*
11 at 824.

12     Based upon the foregoing authorities, Ms. Woodrum has pled a legally viable
13 claim against Mr. Burley.  It is not fraudulent or specious.  His ongoing course of
14 conduct prevented her from returning to work when she and her physician requested
15 accommodations for her disability.  The motion to remand should be granted on this
16 basis alone.

17 **V.    Individuals are liable for statements that they make impacting an employee's**
18 **occupational reputation in the workplace.  Federal Courts have recognized**
19 **this by remanding cases alleging defamation against individual employees.**

20     The essence of this defamation claim is that Lyle Burley falsely accused Ms.
21 Woodrum of not being permitted, or able, to return to work with accommodation.  As
22 such, they had no choice but to not accommodate her.  In other words, it was her fault
23 that the accommodation could not be made.  Complaint, ¶ 133.

24     This is factually false.  Ms. Woodrum could work with accommodations, but
25 Defendant turned the tables on Ms. Woodrum claiming that she was not permitted or able
26 to return to work!  They continue this fiction in the Removal Motion arguing that the
27 statement was true because "Defendants had not received any paperwork to permit
28 Plaintiff to return to work."  Notice of Removal, p. 8, ll. 8-15.

1    This position contradicts the pleadings and the evidence.  Complaint, ¶¶ 33-44;
2  Exhibit A to the Declaration of Jeffrey A. Rager.

3    As such, this is a defamatory statement impacting her occupational reputation.

4    Civil Code Section 46(3) specifically states that defamation per se is a comment
5  directed at a person's *occupational reputation*. *Washer v. Bank of America*, 21 Cal.2d
6  822, 827 (1943).  Usually most defamatory criticisms of work performance or honesty
7  will occur at the work place through criticism by an employer, a supervisor, fellow
8  employees or by plaintiff's former employer.  Civil Code Section 46(3) states:

9    "Slander is a false and unprivileged publication [orally uttered] . . . which:

10    "Tends directly to injure him in respect to his office, profession, trade, or

11    business, either by imputing to him general disqualification in those

12    respects which the . . . occupation peculiarly requires, or by imputing

13    something with reference to his . . . profession, trade, or business that has

14    a natural tendency to lessen its profits [or earnings].

15    "These definitions [Civ. Code, § 46] have been held to include almost any

16    language which, upon its face, has a natural tendency to injure a person's

17    reputation, either generally, or with respect to his occupation. . . ." *Washer*

18    *v. Bank of America,* 21 Cal.2d at 827.  (Emphasis added.)

19    *Cameron v. Wernick,* 251 Cal.App.2d 890, 893 (1967) also provides a helpful
20  definition of Defamation Per Se:

21    "The code definition of libel is very broad and has been held to include

22    almost any language which, upon its face, has a natural tendency to injure

23    a person's reputation, either generally, or with respect to his occupation.

24    [Citation.]   In the determination of this question, the alleged libelous

25    publication is to be construed 'as well from the expressions used, as from

26    the whole scope and apparent object of the writer.' [Citation omitted.]  A

27    person may be liable for what he insinuates as well as for what he says

28    explicitly. [Citation omitted.] 'An article may be libelous on its face even

1       thought it is susceptible to an innocent meaning.'"

2       Numerous cases set forth below hold commonly occurring criticism of
3 performance or the ability to do the job can be Defamation Per Se. *Jensen v. Hewlett-*
4 *Packard Co.,* 14 Cal.App.4th 958, 965 (1993).

5       Assigning blame to a paving contract by asserting that they were <u>responsible for</u>
6 <u>the delay</u> in the . . . project," and were "incompetent" is defamatory. *Williams v. Daily*
7 *Review, Inc.*, 236 Cal.App.2d 405, 411 (1965).

8       Likewise, accusing a school principal of not supervising students properly.  This
9 was published "with the purpose of causing the school board to discharge [plaintiff] from
10 employment." *Larive v. Willitt*, 154 Cal.App.2d 140, 141-142 (1957).

11       Further, individuals are liable for the defamation they publish:

12       "It is of course the general rule that, in the absence of a privilege, anyone who
13       actively participates in the publication of a false and libelous statement is liable
14       for special, general, and even punitive damages. Moreover, it is also the general
15       rule that every repetition of the defamation is a separate publication and hence a
16       new and separate cause of action though the repeater states the source (Prosser,
17       Torts (2d ed.) p.787; *DiGiorgio Corp. v. Valley Labor Citizen,* 260 Cal.App.2d,
18       273 (1968).

19       Defendants' Notice of Removal fails to address any of the case law that applies
20 to claims for defamation in the context of a motion to remand.  As such, we will
21 endeavor to do so below.

22       *Sanchez v. Lane Bryant, Inc.*, 123 F. Supp.3d 1238, 1240 (9th Cir. 2015) involved
23 an employee who made various allegations against her employer, including violations
24 of the Fair Employment and Housing Act and defamation.  The cause of action for
25 defamation named individuals.  Lane Bryant alleged that the individuals were
26 fraudulently joined and removed the case.  The complaint alleged:

27       In August 2014, Tse fired plaintiff citing that she was a poor performer.
28       Plaintiff disputes the claim that she was a poor performer and asserts that

1    she was fired because of her age.

2    Plaintiff asserts a single claim for defamation against all defendants,
3    including Tse.  The basis for this claim is that defendants caused the
4    publication of defamatory statement including "express and implied
5    accusations...that Plaintiff violated Defendant Employer's policies,
6    expressly and impliedly that Plaintiff was a poor performer, incompetent,
7    an unskilled store manager, was not able to perform as store manager, and
8    not being able to speak to competencies [sic]." While the precise dates of
9    publication of these statements are not alleged, plaintiff alleges they
10   began on or before August 11, 2014, and have continued thereafter.
11   Plaintiff alleges that any investigation defendants conducted into the truth
12   of these statements was "nonexistent and at best reckless." Plaintiff also
13   alleges that these statements were knowingly false and that they have
14   caused harm to her personal and professional reputations.

15   *Sanchez*, 123 F.Supp.3d at 1240-1241; citations omitted.

16   In holding that the individuals had not been fraudulently joined, the court relied
17   on *Morales v. Gruma Corporation*, 2013 WL 6018040, at *6 (C.D.Cal. Nov. 12, 2013)
18   stating, "plaintiff's allegations are sufficiently specific to raise a 'non-fanciful
19   possibility' that plaintiff will be able to state a claim for defamation in California state
20   court. *Sanchez*, 123 F.Supp.3d at 1243; citing *Morales*, 2013 WL 6018040, at *4 and
21   *Webber v. Nike USA, Inc.*, 2012 WL 4845549, at *6 (S.D.Cal. Oct. 9, 2012) (finding that
22   allegation of defamation based on statement that the plaintiff was terminated for "poor
23   performance" was sufficient to establish a "non-fanciful possibility that a California state
24   court could conclude that Plaintiff" alleged a claim for defamation).

25   The ruling and overall fact pattern in *Sanchez* is similar to that of *Morales v.*
26   *Gruma Corporation*, 2013 WL 6018040  (C.D.Cal. Nov. 12, 2013), *Johnson v. Wells*
27   *Fargo & Company*, 2014 WL 6475128 (C.D. Cal. Nov. 19, 2014) and *Arvizu v. Wal-*
28   *Mart Stores, Inc.*, 2017 WL 747432 (N.D. Cal. Feb. 27, 2017).

---

1      Morales was hired in 2006. Gruma Corporation fired Morales in 2012.  Morales

2  brought a case against Gruma Corporation alleging violations of the Fair Employment

3  and Housing Act, the California Labor Code, and against two individuals for defamation.

4  *Morales v. Gruma Corporation*, 2013 WL 6018040, *1  (C.D.Cal. Nov. 12, 2013).

5  Defendants removed asserting fraudulent joinder.  The plaintiff alleged that he was

6  informed that he was being terminated for "3 consecutive days no call no show."

7  *Morales*, WL 6018040, *2.

8      He asserted a defamation claim against Ynez and Bolanos, two individuals,

9  asserting:

> 10  that defendants caused the publication of defamatory statements,
>
> 11  including "expressed and implied accusations that [p]laintiff violated
>
> 12  company policy and/or the law, engaged in misconduct, and expressly and
>
> 13  impliedly accusing [p]laintiff of potential criminal activity."  Plaintiff
>
> 14  alleges that, while the precise dates of publication of these statements are
>
> 15  not known, he believes that such publication began 'on or before October
>
> 16  12, 2012, and continued at least through the present,' and that the purpose
>
> 17  of these statements was to justify plaintiff's termination. Plaintiff alleges
>
> 18  that these statements are false, and are causing ongoing harm to his
>
> 19  reputation. *Ibid*.

20      Based on these allegations, the court found that the case should be remanded

21  because the defamation allegations were sufficient to defeat a claim of fraudulent

22  joinder. In *Morales v. Gruma Corporation*, 2013 WL 6018040, *3 (C.D.Cal. Nov. 12,

23  2013).  The court held:

> 24  Here, plaintiff alleges that all defendants, caused the publication of
>
> 25  defamatory statements, including 'expressed and implied accusations that
>
> 26  [p]laintiff violated company policy and/or the law, engaged in misconduct,
>
> 27  and expressly and impliedly accusing [p]laintiff of potential criminal
>
> 28  activity.' Plaintiff alleges that, while the precise dates of publication of these

1   statements are not known, he believes that such publication began 'on or
2   before October 12, 2012, and continued at least through the present,' and that
3   the purpose of these statements was to justify plaintiff's termination. Like the
4   statement about termination "due to performance" in *Umamoto*, plaintiff's
5   allegations regarding statements made by Ynez and Bolanos are sufficiently
6   specific to raise a "nonfanciful possibility" that plaintiff can state a claim for
7   defamation in Los Angeles Superior Court. *Morales v. Gruma Corporation*,
8   2013 WL 6018040, *4 (C.D.Cal. Nov. 12, 2013); citing *Umamoto v.*
9   *Insphere Insurance Solutions, Inc.*, 2013 WL 2084475, at *5 (N.D.Cal. May
10   14, 2013).

11   Here, Defendant's falsely claimed that Plaintiff could not return to work and/or
12   did not provide the appropriate documentation to do so. These false statements were the
13   pretext to justify the termination. The statements are demonstrably false. As such, the
14   defamation claim is not only viable, but likely to succeed against Mr. Burley in Superior
15   Court.

16   Because Ms. Woodrum has stated a legally viable defamation claim against Mr.
17   Burley, this case should be remanded to Superior Court.

18   **VI.   Employees are liable for Intentional Infliction of Emotional Distress**
19   **committed in the workforce. Defendants fail to inform the Court that the**
20   **alleged "managerial privilege" only applies to claims for intentional**
21   **interference with contractual relationship, which Plaintiff has not alleged.**

22   It has long been settled that individual defendants can be liable for actions causing
23   intentional infliction of emotional distress while acting within the scope of their
24   authority to terminate an employee. *Argarwal v. Johnson*, 25 Cal.3d 932, 947 (1979)
25   disapproved in *White v. Ultramar*, 21 Cal.4th 563, fn. 1 (1999) on other grounds.

26   The manager's privilege is a doctrine that bars lawsuits by a terminated employee
27   against a supervisor for an <u>intentional interference with a contractual relationship.</u> The
28   rationale is that "a manager who fires an employee cannot be 'held liable for inducing

---

13
PLAINTIFF DAWN MARIE WOODRUM'S NOTICE OF AND
MOTION FOR REMAND

1  the breach, for their action was that of the corporation itself.'" *Hernandez v. Ignite Rest.*

2  *Grp., Inc.*, 917 F. Supp. 2d 1086, 1090 (E.D. Cal. 2013).  In other words, there has to be

3  interference with the contract by a third party.

4      *Hernandez* went on to explain that the manager's privilege does not apply to

5  claims of intentional infliction of emotional distress. *Id.* at p. 1091 citing *Webber v. Nike*

6  *USA, Inc.*, 2012 WL 4845549, at *4 (S.D.Cal. Oct. 9, 2012) (holding that, under

7  California law, a tort of intentional infliction of emotional distress is outside the scope

8  of the manager's privilege)

9      The case relied upon by Defendant's in their Removal papers, *McCabe v. General*

10 *Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987) "was rejected" by *Hernandez*.  *Davis v.*

11 *Wal-Mart Stores Inc.*, No. 216CV9480JFWAJWX, 2017 WL 499595, at *4 (C.D. Cal.

12 Feb. 6, 2017); See also *Sanchez v. Lane Bryant, Inc.*, 123 F.Supp.3d at 1246; *Calero v.*

13 *Unisys Corp.*, 271 F.Supp.2d at 1180 (granting remand where defendants failed to prove

14 that the manager's privilege applied to intentional infliction of emotional distress claim

15 against manager).

16     *Calero* explained, "It is certainly questionable whether a managerial privilege

17 could be asserted where the employer's or its agent's or employee's conduct is sufficiently

18 egregious so as to constitute outrageous conduct. . . . Since defendants have the burden

19 of establishing that they are entitled to removal and since they have failed to convince

20 this court that a state court will find that the manager's privilege applies in this action,

21 and since all questions of fact, of which there are many, must be resolved in plaintiff's

22 favor, it is clear that this action must be remanded." *Calero v. Unisys Corp.*, 271 F.

23 Supp. 2d at 1180.

24     *Hernandez* also distinguished another case relied upon by the Defendants,

25 *Kacludis v. GTE Sprint Communications Corp.*, 806 F.Supp. 866, 872 (N.D. Cal. 1992).

26 *Hernandez* observed that, "[t]he *Kacludis* court, without any substantive analysis,

27 concluded that the plaintiff's defamation claim against a supervisor who fired the

28 plaintiff was within the scope of the manager's privilege under California law."  It went

1  on to note that "there are numerous cases from both California state courts and district

2  courts refusing to apply the manager's privilege outside the scope of claims for

3  intentional interference with contractual relationship." *Hernandez v. Ignite Rest. Grp.,*

4  *Inc.,* 917 F. Supp. 2d at 1091.

5     *Kacludis* was expressly distinguished in *May v. Semblant, Inc.,* No.

6  5:13-CV-01576-EJD, 2013 WL 5423614, at *4 (N.D. Cal. Sept. 27, 2013). The Court

7  explained, "The manager's privilege protects corporate agents and employees acting for

8  and on behalf of a corporation from liability for inducing a breach of a corporation's

9  contract. . . . Plaintiff's first cause of action is not for breach of contract, and Plaintiff

10  does not assert a claim that Semblant induced a breach of its own contract. Thus, the

11  manager's privilege from the Shoemaker line of cases does not apply here." *Ibid.*

12  (Emphasis Added.)

13     Likewise, the *Los Angeles Airway v. Davis*, 687 F.2.d 321, 328 cited by Defense

14  was not an employment case.  It was a claim for inducing a breach of contract between

15  an attorney and business advisor.

16     Clearly, there is no managerial privilege exempting Mr. Burley from a claim for

17  Intentional Infliction of Emotional Distress.

18     Moreover, it is axiomatic that discriminatory or harassing conduct give rise to a

19  claim for intentional infliction of emotional distress.  *Gantt v. Sentry Ins.,* 1 Cal.4th

20  1083, 1085  (1992); *Cabesuela v. Browning-Ferris Indus.,* 68 Cal.App.4th 101, 112

21  (1998) (fired for health and safety complaints); *Kovatch v. California Cas. Mgmt. Co.,*

22  65 Cal.App.4th 1256, 1277 (1998) (sexual orientation discrimination); *Fisher v. San*

23  *Pedro Peninsula Hosp.* 214 Cal.App.3d 590, 618 (1989) (sexual harassment allegations

24  held outrageous); *Rulon-Miller v. IBM Corp.* 162 Cal.App.3d 241, 254 (1984) (violation

25  of privacy).

26     Further, the Courts have held that the conduct does not have to involve harassment

27  or discrimination.  Rather, the manner in which an employee was terminated has been

28  held sufficient to sustain a claim for intentional infliction of emotional distress. *Rulon-*

1  *Miller v. IBM Corp.,* 162 Cal.App.3d 241, 254 (1984) (wrongful termination and privacy

2  violation held outrageous); *Huber v. Standard Ins. Co.,* 841 F.2d 980, 987 (9th Cir. 1988)

3  (plaintiff terminated without notice, age 50, and asked to vacate premises in one day held

4  outrageous); *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 1120 (1984) (defendant

5  intentionally abused its financial control over plaintiff by terminating payments without

6  good cause and lying about reasons for termination held outrageous).

7    Here, Ms. Woodrum was escorted off the premises of Defendant. After attempting

8  to return to work with restrictions provided by a physician, Mr. Burley turned the tables

9  on Ms. Woodrum taking the position she could not return to work. Respectfully, this

10  conduct could suffice as a basis for an Intentional Infliction of Emotional Distress Claim.

11  **VII.  Conclusion.**

12    Ms. Woodrum has alleged three legally viable claims against Mr. Burley: 7th cause

13  of action for Disability Harassment, 9th cause of action for Defamation and 10th cause of

14  action for Intentional Infliction of Emotional Distress. Each is an independent basis for

15  Remand.

16    As such, Plaintiff respectfully requests that this Motion for Remand be granted.

17

18  Dated: January 19, 2018    THE RAGER LAW FIRM

19

20

21          By: _____

22           Jeffrey A. Rager
         James Y. Yoon
         Attorneys for Plaintiff,

23           DAWN MARIE WOODRUM

24

25

26

27

28