# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 17-2264-DOC (ASx)                               Date: May 9, 2018

Title: DAWN MARIE WOODRUM V. AUTOMATIC DATA PROCESSING INC., ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [8]**

Before the Court is Plaintiff Dawn Marie Woodrum's ("Woodrum" or "Plaintiff") Motion to Remand ("Motion") (Dkt. 8). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court GRANTS Plaintiff's Motion.

**I.     Background**

    **A.     Facts**

The Court adopts the facts as set out in Plaintiff's Complaint. *See* Notice of Removal ("Not. Rem.") (Dkt. 1) Ex. 1 (Complaint ("Compl.")).

Plaintiff Woodrum is an individual who resides in Orange County, California. Compl. ¶ 2. Defendants Automatic Data Processing, Inc. and ADP, LLC (collectively, "ADP") are corporations existing in California, but their principal places of business are located at One ADP Blvd., MS 433, Roseland, New Jersey, 07068. *Id.* ¶ 3. Defendant Lyle Burley ("Burley") is an individual who resides in Orange County, California. *Id.* ¶ 4.

Plaintiff alleges that "each of the Defendants herein was at all times relevant hereto the agent, employee or representative of the remaining Defendants and was acting at least in part, within the course and scope of such relationship in doing the things herein alleged." *Id.* ¶ 6. Moreover, Plaintiff alleges that "each of the Defendants was acting in a single or joint employer, agency, employer, and/or alter ego capacity such that they are liable for the acts of their agents and/or employees." *Id.* ¶ 7.

Plaintiff was hired by ADP on February 8, 1999, as an overflow computer operator. *Id.* ¶ 8. For years, Plaintiff received positive job performance reviews. *See id.* ¶¶ 10–17, 19. On November 27, 2013, Plaintiff became a Tax Service Coordinator II, and effective November 16, 2015, Plaintiff became an "Impl [sic] Specialist II." *Id.* ¶¶ 21, 23. On June 30, 2016, Plaintiff "received an Overall Rating of 3, indicating Strong Performance and Valued Contribution." *Id.* ¶ 25.

In November 2016, Plaintiff underwent a nerve study for numbness and tingling in her left arm, after which she was diagnosed with carpal tunnel. *Id.* ¶ 26. As a result, Plaintiff filed a Workers' Compensations Claim. *Id.* On November 28, 2016, Plaintiff returned to her physician after work hours and was instructed to undergo physical therapy. *Id.* ¶ 27. When Plaintiff explained to Human Resources that she had a carpal tunnel issue in the left arm, Human Resources told Plaintiff that physical therapy would have to be done on non-work hours. *Id.*

Work restrictions to address Plaintiff's carpal tunnel were sent directly from the Workers' Compensation Medical provider, Concentra Occupational Medicine, to Plaintiff's employer. *Id.* ¶ 29. First, Defendants were informed of a restriction that required Plaintiff to take a ten-minute break from typing every hours, a restriction that Defendants accommodated. *Id.* ¶ 28. On December 21, 2016, Plaintiff was given restrictions of a twenty-minute break from repetitive typing every hour, which Defendants accommodated. *Id.* ¶ 30.

In January 2017, Plaintiff was informed that she would need surgery on her left arm, and on March 7, 2017, Plaintiff underwent carpal tunnel surgery. *Id.* ¶¶ 31–32. Plaintiff was out of work from March 8, 2017, through May 22, 2017, but she was "not offered leave under CFRA nor was her time designated as such." *Id.* ¶ 32.

On May 16, 2017, Plaintiff was released to work effective May 22, 2017, albeit with the restrictions of a thirty-minute productive break from typing every hour, and no lifting over five pounds. *Id.* ¶ 33. On May 22, 2017, Plaintiff returned to work. *Id.* ¶ 34. After Plaintiff had worked for two hours, her supervisor, Defendant Lyle Burley, said she would have to leave because the employer had not approved her return to work. *Id.* He

walked her out of the facility, and said that he would let her know when her return to work was approved. *Id.* On May 23, 2017, Mr. Burley texted that he had not heard anything yet. *Id.* ¶ 35. The next day, "he texted that there was still no word." *Id.* ¶ 36.

On May 26, 2017, Plaintiff was seen by her physician, and sent her restrictions to Human Resources. *Id.* ¶ 37. On June 13, 2017, Plaintiff's restrictions were modified to a thirty-minute productive break from typing every hour, and no lifting over ten pounds. *Id.* ¶ 38.

On July 4, 2017, Plaintiff "received a COBRA notice from Defendants," which is a type of notice related to health care coverage that is usually provided when employment is being terminated. *Id.* ¶ 39.

On July 25, 2017, Plaintiff's restrictions were modified to a five-minute break for every hour of work. *Id.* ¶ 40. On July 26, 2017, Plaintiff called Mr. Burley, and left a voicemail inquiring whether she would be allowed to return to work. *Id.* ¶ 41. On July 26, 2017, Mr. Burley texted Plaintiff that he had not received any information about her return to work so she would not be allowed to return. *Id.* ¶ 42. On July 26, 2017, Jason Anderson from Human Resources called Plaintiff back and asked Plaintiff to send her paperwork. *Id.* ¶ 43.

On July 27, 2017, Plaintiff called back her manager, Mr. Burley, and left him a voicemail. *Id.* ¶ 44. Mr. Anderson and Mr. Burley called Plaintiff back and told her that she no longer had a job. *Id.* ¶ 45. In addition, Mr. Anderson and Mr. Burley told Plaintiff that she could take a thirty-day unpaid personal leave of absence, in response to which Plaintiff asked how she could take a personal leave from a job she no longer had. *Id.* From July 27, 2017, to August 26, 2017, Plaintiff was placed on a personal leave of absence, during which Defendants directed that Plaintiff's accrued time be paid out to her. *Id.* ¶ 46. On August 29, 2017, Jason Anderson from Human Resources informed Plaintiff that she was terminated from her job, as her personal leave expired that day. *Id.* ¶ 47.

### B. Procedural History

On November 6, 2017, Plaintiff filed her Complaint in the Superior Court of California, County of Orange. *See* Compl. Plaintiff brings claims for: (1) disability discrimination based on failure to make a reasonable accommodation in violation of California's Fair Housing and Employment Act ("FEHA"), California Government Code § 12940 *et seq.*, against ADP; (2) disability discrimination based on failure engage in the interactive process in violation of FEHA, California Government Code § 12940 *et seq.*,

against ADP; (3) disability discrimination in violation of FEHA, California Government Code § 12940(a), against ADP; (4) violation of the California Family Rights Act ("CFRA"), California Government Code § 12945.2, against ADP; (5) retaliation in violation of CFRA, California Government Code § 12945.2 *et seq.*, against ADP; (6) retaliation in violation of FEHA, against ADP; (7) disability harassment in violation of FEHA, against all Defendants; (8) failure to prevent and/or remedy discrimination and retaliation in violation of FEHA, California Government Code §§ 12940(k), 12940(j)(1), against ADP; (9) defamation per se/per quod, against all Defendants; and (10) intentional infliction of emotional distress, against all Defendants. *Id.* ¶¶ 48–144.

On December 28, 2017, Defendants removed the case to this Court based on diversity jurisdiction. *See* Not. Rem. at 2–12.

On January 19, 2018, Plaintiff filed the instant Motion. On February 5, 2018, Defendants opposed ("Opposition") (Dkt. 9), and on February 9, 2018, Plaintiff replied ("Reply") (Dkt. 10).

## II.   Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. A federal court may order remand for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c).

A federal court has diversity jurisdiction if: (1) the controversy is between "citizens of different States," and (2) the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity, meaning that no plaintiff can be from the same state as a defendant. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006). Thus, a case ordinarily cannot be removed to the federal court if a plaintiff and a defendant are citizens of the same state. *See* 28 U.S.C. § 1332(a). However, removal is proper despite the presence of a non-diverse defendant where that defendant is fraudulently joined as a sham defendant. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *Kruso v. Int'l*

*Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). The failure to state a claim against the non-diverse defendant must be "obvious according to the well-settled rules of the state." *United Comp. Sys. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).

The "general presumption" is that the inclusion of a defendant residing in the same state as the plaintiff is not for the sole purpose of defeating diversity jurisdiction. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). This presumption requires defendants to "do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (internal citations omitted). Defendant must also show that, even if a plaintiff's claims do not meet the necessary pleading requirements at the time of removal, he "could not re-allege at least one of them to do so." *Suelen v. Wells Fargo Bank, N.A.*, No. C-13-002 MEJ, 2013 WL 1320697, at *4 (N.D. Cal. Apr. 1, 2013). "[R]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Id.* Lastly, a fraudulent joinder "must be proven by clear and convincing evidence." *Hamilton Materials, Inc.*, 494 F.3d at 1206.

### III. Discussion

Defendants removed this action on the grounds that the non-diverse Defendant, Lyle Burley, was fraudulently joined to prevent Defendants from removing the case to federal court. *See* Not. Rem. at 5. Defendants claim that Mr. Burley is a sham defendant who should be ignored for purposes of diversity jurisdiction because Plaintiff "fails to allege any actionable conduct" on the part of Mr. Burley and thus cannot state a claim against him. *Id.* ¶ 17. In particular, Defendants argue that Plaintiff cannot bring her seventh cause of action for disability harassment in violation of FEHA against Mr. Burley because, "[a]s a matter of law, individual supervisory employees are not personally liable for 'commonly necessary personnel management actions' that are later claimed to be discriminatory in violation of the FEHA." *Id.* ¶ 19 (quoting *Reno v. Baird*, 18 Cal. 4th 640 (1998)). In addition, Defendants claim that Plaintiff cannot state her ninth cause of action for defamation against Mr. Burley because "the alleged publication involves a true fact, which cannot be defamatory." *Id.* ¶ 23. Finally, Defendants argue that Plaintiff cannot adequately state her tenth cause of action for intentional infliction of emotional distress against Mr. Burley because, among other deficiencies, Mr. Burley acted within the course and scope of his employment and is thus shielded from liability. *Id.* ¶ 27; *see also id.* ¶¶ 24–26, 28–29.

In her Motion, Plaintiff claims that Defendants have failed to carry their heavy burden to establish that Mr. Burley was fraudulently joined, and that this case should

therefore be remanded to state court. *See generally* Mot. Plaintiff argues that she can adequately state the three claims she asserted against Mr. Burley in her Complaint because: (1) while Defendants are correct that an individual cannot be held liable for discrimination under the FEHA, an individual can be held liable for harassment, and thus Plaintiff has adequately stated her seventh cause of action for disability harassment in violation of FEHA against Mr. Burley; (2) Plaintiff's defamation claim against Mr. Burley lies because Mr. Burley's statements that Plaintiff was not able or permitted to return to work were false; and (3) the "managerial privilege" which Defendants claim shields Mr. Burley from liability for intentional infliction of emotional distress only applies to claims for intentional interference with contractual relationship. *See* Mot. at 5–16. Defendants respond that the Court should deny Plaintiff's Motion because Plaintiff failed to meet and confer as required by Local Rule 7-3, and because "it is clear from the Complaint that Plaintiff's allegations against [Mr. Burley] fall squarely within the realm of managerial duties for which he cannot be held liable as a matter of law." Opp'n at 1.

The Court will discuss Rule 7-3 compliance and then address Plaintiff's claims against Defendant Burley to determine whether Defendants have shown by clear and convincing evidence that Plaintiff cannot state any of her claims against Mr. Burley.

### A.      Local Rule 7-3

As an initial matter, Defendants argue in their Opposition that the Court should deny Plaintiff's Motion because Plaintiff failed to make any effort to meet and confer as required under Local Rule 7-3. Opp'n at 1–2. Pursuant to Local Rule 7-3, "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." L.R. 7-3. Thus, under this rule, parties should discuss with the opposing attorneys not only the fact that they intend to file a motion, but they must make clear the grounds for the motion and each substantive issue the motion will address. *See id.* "Failure to comply with the Local Rules does not automatically require the denial of a motion, however, particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015).

Defendants claim that at no point prior to filing her Motion did Plaintiff's counsel contact Defendants' counsel to discuss the substance of the Motion or attempt to negotiate a potential resolution. Opp'n at 2. Indeed, Plaintiff's Motion does not include a Local Rule 7-3 compliance statement. *See generally* Mot. Moreover, in her Reply, Plaintiff does not deny the alleged violation, and instead asserts that "no meet and confer

would have resolved this Motion [because] Defendants have steadfastly opposed this Motion despite the dearth of caselaw supporting their position." Reply at 1.

Thus, it is clear that Plaintiff failed to comply with Local Rule 7-3. The Court notes that a Local Rule 7-3 meet and confer is important not only for potentially resolving disputed issues before a motion is filed, but also for providing notice to the opposing party of the substantive issues to be addressed in the motion, so that the opposing party is afforded sufficient time to prepare an Opposition. However, Defendants do not allege that they suffered any prejudice as a result of the alleged failure to meet and confer. *See generally* Opp'n. Similarly, no such prejudice is apparent, as Defendants were able to submit their Opposition within the allotted time. Moreover, the Court notes that Plaintiff noticed the hearing for her Motion over five weeks from the filing date, which gave Defendants over two weeks—rather than just one week—to file their Opposition. Accordingly, the Court elects not to deny Plaintiff's Motion on procedural grounds and will instead consider Plaintiff's Motion on the merits. *See Hernandez*, 94 F. Supp. 3d at 1088. However, the Court takes compliance with the Local Rules very seriously, and admonishes both parties to comply with both the letter and spirit of the rules in the future.

       **B.**      **FEHA Harassment Claim against Mr. Burley**

In her seventh cause of action, Plaintiff asserts that Defendants—including Mr. Burley—harassed her on the basis of her disabilities, in violation of FEHA. *See* Compl. ¶¶ 116–123. In the Notice of Removal, Defendants assert that Plaintiff cannot bring her harassment claim against Mr. Burley because, "[a]s a matter of law, individual supervisory employees are not personally liable for 'commonly necessary personnel management actions' that are later claimed to be discriminatory in violation of the FEHA." Not. Rem. ¶ 19 (quoting *Reno v. Baird*, 18 Cal. 4th 640 (1998)). Defendants further argue that Plaintiff only alleges common personnel management decisions—rather than facts that can constitute "harassment"—because "Plaintiff alleges that [Mr. Burley] denied Plaintiff's accommodation requests and terminated her employment." *Id.* ¶ 21. Defendants claim that these actions "fall squarely within the realm of work-related management decisions for which individual managers cannot be held personally liable." *Id.* In her Motion, Plaintiff responds that while an individual cannot be held liable for discrimination under FEHA, an individual can be held liable for harassment under that statute, and California Supreme Court precedent allows personnel management actions to be relied upon as evidence in support of a FEHA harassment claim. Mot. at 5 (citing *Roby v. McKesson*, 47 Cal. 4th 686, 707 (2009), *as modified* (Feb. 10, 2010)).

As an initial matter, Plaintiff is correct that individuals can be held liable for harassment under the FEHA. Cal. Gov't Code § 12940(j) (making it unlawful "for an

employer . . . or any other person, because of . . . physical disability . . . to harass an employee" and providing that "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee"); *see, e.g.*, *Roby*, 47 Cal. 4th at 711 (affirming FEHA harassment verdict against individual supervisor). But Defendants do not argue that an individual can never be liable for FEHA harassment—rather, Defendants argue that, as a matter of law, a FEHA harassment claim cannot be brought against an individual *for work-related personnel management decisions* made by that individual. *See* Not. Rem. ¶¶ 19, 21; Opp'n at 4. They suggest that official personnel management decisions that are alleged to be discriminatory can only form the basis of a FEHA discrimination claim against an employer, but not a FEHA harassment claim against a supervisor. *See* Not. Rem. ¶¶ 19, 21.

In *Roby*, the California Supreme Court explained that FEHA discrimination claims indeed involve "bias in the exercise of official actions"—such as "hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action"—on behalf of an employer, whereas FEHA harassment focuses on the communication of bias or offensive messages to the harassed employee in the workplace. *Roby*, 47 Cal. 4th at 706–07. However, the Court in *Roby* held that, under the FEHA, personnel management actions can constitute evidence in support of a harassment claim. *Id.* at 705. In support of its holding, the Court explained that "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Id.* at 709. As an example, the Court pointed to *Miller v. Department of Corrections*, 36 Cal. 4th 446, 466 (2005), and explained:

> [I]n *Miller* the immediate source of the plaintiffs' alleged injuries was the offensive sex-biased *message* that the supervisor conveyed, not a demotion or an unfavorable job assignment, and therefore the plaintiffs' cause of action was for *harassment,* not for discrimination. Nevertheless, official employment actions constituted the *evidentiary basis* of the harassment cause of action, because the supervisor used those official actions as his means of conveying his offensive message. Our decision in *Miller* . . . confirms that harassment is generally concerned with the *message* conveyed to an employee, and therefore with the social environment of the workplace, whereas discrimination is concerned with explicit changes in the terms or conditions of employment. *Miller,* however, makes clear that in some cases the hostile message that constitutes

> the harassment is conveyed through official employment actions, and therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim.

*Roby*, 47 Cal. 4th at 708.

Thus, Plaintiff may pursue a FEHA harassment claim against Mr. Burley and rely on evidence about personnel management actions taken by Mr. Burley if those actions entailed the communication of a hostile and harassing message. For example, if Mr. Burley communicated information about personnel management decisions in a harassing manner or otherwise harassed Plaintiff while communicating with her in the course of taking commonly necessary personnel management actions, evidence of such actions could be used to support Plaintiff's harassment claim. *See Roby*, 47 Cal. 4th at 708; *Niami v. Fed. Exp. Print Servs., Inc.*, No. C 09-4384 JF, 2010 WL 958045, at *6 (N.D. Cal. Mar. 12, 2010) ("The fact that the 2006 decisions were 'official employment actions' . . . does not preclude them from having had 'a secondary effect of communicating a hostile message . . . .'"). In other words, contrary to Defendants' assertions, Plaintiff is not barred, as a matter of law, from suing Mr. Burley for FEHA harassment for actions he took as her supervisor. *See* Opp'n at 4; Cal Gov't Code § 12940(j).

Having failed to establish a legal bar to Plaintiff's claim, Defendants challenge the sufficiency of Plaintiff's allegations, arguing she fails to state a claim for FEHA harassment against Mr. Burley. *See* Opp'n at 3–7. For example, Defendants suggest that Plaintiff fails to allege any conduct by Mr. Burley that can constitute "harassment," let alone harassment that is "sufficiently severe or pervasive" to state a claim. *See* Opp'n at 3–4, 7. However, whether an action is harassing as opposed to necessary and within the scope of employment is generally a question of fact reserved for the jury. *See Smith v. Staples Contract & Commercial, Inc.*, No. CV 14–07836–AB (ASx), 2014 WL 7333421, at *6 (C.D. Cal. Dec. 19, 2014) ("Defendants contend that every fact Plaintiffs allege as to Morrison constitutes an act necessary to Morrison's job performance, rather than one 'engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' It may be that a jury would so find, but that is not the inquiry before the court. In California, whether an act falls within the scope of employment is generally a question of fact reserved for the jury."); *see also Christ v. Staples, Inc.*, No. CV 14-07784 MMM JEMX, 2015 WL 248075, at *8 (C.D. Cal. Jan. 20, 2015) (citing sources establishing that "[i]t is the quality of harassing conduct, and not necessarily the quantity, that is key"; "harassment by a supervisor . . . is more injurious than harassment by a co-worker"; and "in some instances, the Court of Appeal has found that 'even a single harassing act by a supervisor may be sufficient to support a claim of harassment.'" (citations omitted)).

Moreover, the inquiry before the Court is not whether Plaintiff has sufficiently stated her FEHA harassment claim against Mr. Burley, but whether Defendants have shown by clear and convincing evidence that, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in Plaintiff's favor, Plaintiff could not possibly recover against Mr. Burley. *Kruso*, 872 F.2d at 1426; *Hamilton Materials, Inc.*, 494 F.3d at 1206; *see also Christ*, 2015 WL 248075 at *7 ("The court is not deciding whether Christ *has* stated a claim. Instead, the burden is on defendants to show by clear and convincing evidence that there is absolutely no possibility he can allege a harassment claim under well-settled California law."); *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13-CV-00245-LJO-SK, 2013 WL 3146809, at *6 (E.D. Cal. June 18, 2013) ("Merely showing that an action is likely to be dismissed against that defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent." (citation omitted)). Thus, Defendants' attacks on Plaintiff's claim as currently alleged are insufficient to meet this high bar required to establish fraudulent joinder, particularly if Plaintiff can amend her Complaint to provide more detailed factual allegations and strengthen her claim.[1] *See Amarant*, 2013 WL 3146809 at *6 (noting that the mere fact "that a claim against the . . . defendant is insufficiently pled does not prove clearly and convincingly that there is absolutely no possibility that the plaintiff will be able to establish a cause of action," and concluding that the individual defendant against whom a FEHA harassment claim was brought had not been fraudulently joined); *Niami*, 2010 WL 958045 at *7 (concluding that individual defendant against whom a FEHA harassment claim was brought had not been fraudulently joined and commenting, "Although Niami ultimately may fail to prove her claim against Latter at trial, the Court concludes that Defendants have not met their burden of showing that Niami could not possibly recover against Latter, or that Niami's purported failure to state a claim at this stage is 'obvious according to the settled rules of the state'" (citing *Soo v. United Parcel Service, Inc.*, 73 F. Supp. 2d 1126, 1129 (N.D. Cal. 1999) (holding that plaintiff is not a "sham" defendant "because UPS has not demonstrated that it is a 'settled rule of the

---

[1] In addition, Defendants' attempts to dispute the factual basis of Plaintiff's claims, or explain why Mr. Burley's actions were reasonable, are unavailing because the Court must resolved all disputed questions of fact in and make all inferences in Plaintiff's favor. *See Kruso*, 872 F.2d at 1426. *Compare* Mot. at 7 (asserting that Mr. Burley escorted Plaintiff off Defendant's premises after Plaintiff requested accommodations, that Mr. Burley "repeatedly denied and stymied all her ongoing accommodation requests in the months that followed," and that Mr. Burley then told Plaintiff she no longer had a job to return to), *and* Reply at 4 (alleging, among other things, that Mr. Burley lied and fraudulently mislead Plaintiff about matters relating to Plaintiff's disability accommodations and employment), *with* Opp'n at 6 (explaining that Mr. Burley escorted Plaintiff off the premises because "the employer had not yet approved her to return to work," and that thus Mr. Burley's "alleged escorting Plaintiff out of a building, denying Plaintiff's accommodation requests, and terminating Plaintiff's employment, without any other conduct engaged in for personal gratification or statement intended to offend Plaintiff, does not fall outside the scope of [Mr. Burley's] managerial duties").

state' that supervisors cannot be held personally liable for retaliatory employment decisions"))).

      Defendants nevertheless attempt to carry their heavy burden to show that, even if Plaintiff's claims do not meet the necessary pleading requirements, she "could not re-allege at least one of them to do so" because she "would not be afforded leave to amend [her] complaint to cure [the] purported deficiency." *Suelen*, 2013 WL 1320697, at *4. Specifically, Defendants claim that "Plaintiff would not be able to convince a court to allow her to amend the Complaint," because "Plaintiff would have to show there is a new fact of which she was unaware at the time of filing and provide a sufficient reason for not amending her complaint earlier." Opp'n at 7 (citing Cal. Rules of Court Rule 3.1324(b)). However, the California Rule that Defendants cite in support of their argument does not require that a plaintiff "show there is a new fact of which [the plaintiff] was unaware at the time of filing and provide a sufficient reason for not amending her complaint earlier." *See id.*; *see generally* Cal. R. Ct. 3.1324. Rather, the rule simply provides that a declaration accompanying a motion to amend "must specify: (1) the effect of the amendment; (2) why the amendment is necessary and proper; (3) when the facts giving rise to the amended allegations were discovered; and (4) the reasons why the request for amendment was not made earlier." Cal. R. Ct. 3.1324(b). Thus, that rule does not impose a substantive requirement for the granting of motions to amend pleadings, and thus Defendants have not shown that Plaintiff would not be afforded leave to amend her Complaint. *See id.*; *see also* Reply at 12 n.4 (citing authority suggesting that leave to amend is routinely and liberally granted in California courts).

      For the foregoing reasons, Defendants have failed to establish that Plaintiff is legally barred from bringing her FEHA harassment claim against the non-diverse defendant, Mr. Burley. "Stated differently, 'the complaint's shortcomings, if any, are strictly factual.'" *Christ*, 2015 WL 248075, at *9 (citation omitted). Since Defendants have not shown that Plaintiff's claim against Mr. Burley is "*obviously* foreclosed based on discrete and undisputed facts," or that Plaintiff would not be granted leave to amend to cure any factual deficiencies in her claim, Defendants have not carried their burden to show that Plaintiff could not possibly recover from Mr. Burley under a FEHA harassment theory. *Amarant*, 2013 WL 3146809, at *4, 10 ("[A] defendant must essentially show that the plaintiff cannot assert a claim against the non-diverse party as a matter of law." (citation omitted)); *Ontiveros v. Michaels Stores, Inc.,* No. CV 12–09437 MMM (FMOx), 2013 WL 815975, at *6 (C.D.Cal. Mar.5, 2013) ("Even if the complaint does not allege sufficient facts to plead a viable harassment claim against [the individual non-diverse defendant], Michaels has not shown that the [plaintiff] could not amend to add additional allegations of harassment. . . . Purported deficiencies in the pleading do not

demonstrate that Baghdadlian is a sham defendant." (citations omitted)); *Burris v. AT & T Wireless, Inc.,* No. C 06–02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) (noting that although "as currently pled," plaintiff had not sufficiently stated a claim, the defendant "ha[d] not demonstrated that, under California law, [the plaintiff] would not be afforded leave to amend his complaint to cure this purported deficiency" and thus the defendant "failed to demonstrate that it is obvious under settled state law that [the plaintiff] cannot prevail against [the individual defendant] and thus has not demonstrated that this Court has subject matter jurisdiction").

Accordingly, Mr. Burley was not fraudulently joined and is not a sham defendant in this action, and the Court need not address Plaintiff's other claims against Mr. Burley for defamation and intentional infliction of emotional distress. *See Hornby v. Integrated Project Mgmt., Inc.*, No. CV 14–04331 LB, 2014 WL 7275179, *7 (N.D. Cal. Dec. 22, 2014) ("Based on the above, the court finds that Ms. Hornby has at least 'one potentially valid claim against a non-diverse defendant,' and thus Defendants have not met their heavy burden to show that she could not possibly recover against [the non-diverse defendants]."); *Knutson v. Allis Chalmers Corp.*, 358 F. Supp. 2d 983, 993 (D. Nev. 2005) ("In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant."(citation omitted)).

## IV. Disposition

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand and REMANDS this case back to the Superior Court of California, County of Orange.

The Clerk shall serve this minute order on the parties.